IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN THE STATE OF FLORIDA IN AND FOR HILLSBOROUGH COUNTY
CIVIL DIVISION

LEROY HAGINS and
SONYA HAGINS,

     Plaintiffs

vs.

Case No:   10007801

Division:   DIVISION B

GEOVERA SPECIALTY INSURANCE
COMPANY, f/k/a USF&G SPECIALTY INSURANCE
COMPANY,
     a domestic corporation,
Defendant,

RECEIVED

APR - 5 2010

CLERK OF CIRCUIT COURT
HILLSBOROUGH COUNTY, FL

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiffs, LEROY HAGINS and SONYA HAGINS, by and through their undersigned

Attorney, files this their Complaint against the Defendant, GEOVERA SPECIALTY INSURANCE

COMPANY, f/k/a USF&G SPECIALTY INSURANCE COMPANY, and alleges:

1.     This is an action for damages in excess of $15,000.00.

2.     The Plaintiffs, LEROY HAGINS and SONYA HAGINS, hereinafter referred to as

"HAGINS", at all times material hereto, were and are residents of Hillsborough County, Florida.

3.     The Defendant, GEOVERA SPECIALTY INSURANCE COMPANY f/k/a USF&G

SPECIALTY INSURANCE COMPANY, hereinafter referred to as "USF&G", was at all times

material hereto a domestic corporation with its principal place of business in Fairfield, California,

authorized as a surplus lines property and casualty insurance carrier to do business in the State of

Florida and was doing business in Hillsborough County, Florida.

4.      At all times material to this action, USF&G, issued to Plaintiffs a policy of insurance which was in full force and effect at all material times, policy number GH20013539, which provided coverage for, among other things, loss by sinkhole activity to Plaintiffs' home located at 4408 Cobia Drive, Tampa, Florida.  A certified copy of the subject policy of insurance is attached hereto as Exhibit "A" and is incorporated by reference herein.

## GENERAL ALLEGATIONS

5.      The subject policy provides coverage for loss due to sinkhole activity as follows:

### SECTION I - PERILS INSURED AGAINST

The following peril is added:

> Sinkhole Collapse, meaning actual physical damage arising out of,
> or caused by, sudden settlement or collapse of the earth supporting
> such property and only when such settlement or collapse results from
> subterranean voids created by the action of water on limestone or
> similar rock formations.

The Section I - Earth Movement Exclusion  2. does not apply to this peril.

6.      On or about May 1, 2005, Plaintiffs noticed damage to their property but did not believe or have reason to believe that this damage may be sinkhole related until after learning that there were confirmed sinkholes to neighboring properties on or about December, 2008.

7.      After learning of sinkhole activity in the neighborhood and then suspecting that the damage they noticed may in fact be due to sinkhole activity, Plaintiffs submitted a claim to Defendant on January 13, 2009.

8.      After receiving no further communication regarding the claim from Defendant, Plaintiffs' counsel again contacted a representative of the Defendant on May 14, 2009 learning that the claim number assigned was deemed to be invalid.

9.     On May 21, 2009, Plaintiffs' counsel faxed a claim notice to a representative of the Defendant and a response was received June 1, 2009 indicating the claim would proceed forward.

10.    Defendant retained counsel who requested an Examination Under Oath of the Plaintiffs pursuant to the terms and conditions of the subject policy of insurance on or about June 3, 2009 and confirmed the scheduling of the examination under oath in a subsequent letter for July 9, 2009 requesting multiple categories of documentation.

11.    Plaintiffs complied with the request for an examination under oath and produced what documents Plaintiffs reasonable had at the examination under oath.

12.    By letter dated July 9, 2009, Defendant requested documentation that the Plaintiffs were unable to locate prior to the examination under oath.

13.    By letter dated July 20, 2009, Defendant forwarded to Plaintiffs a letter indicating that a geotechnical engineer had been retained, the engineer would test the property for sinkhole activity and if the engineer concludes that there is a sinkhole loss to the property, the cost to stabilize the land would be paid if Defendant determined that coverage applies to this loss. Attached as Exhibit "B" is a copy of the subject letter.

14.    By letter dated August 4, 2009, Plaintiffs produced what documents that could reasonable locate in response to Defendants documentation request.

15.    On August 7, 2009 HSA Engineers & Scientists began the investigation of the subject property on behalf of the Defendant and issued a report dated November 4, 2009 which concluded that sinkhole activity was the cause of the damage to the subject property.

16.    Despite the fact that engineer for the Defendant, HSA Engineers & Scientists, confirmed that sinkhole activity was the cause of documented damage to the structure, the defendant

denied the claim by letter dated December 3, 2009 claiming that the Defendant was prejudiced by what the Defendant claimed was a failure to promptly submit the claim. A copy of the denial letter is attached to the Complaint as Exhibit "C" and is incorporated by reference herein.

<u>COUNT I</u>
<u>BREACH OF CONTRACT</u>

17.     Allegations one (1) through sixteen (16) are realleged and incorporated by reference herein.

18.     Because sinkhole activity exists at the subject property, USF&G is in material breach of the subject contract of insurance for denying the claim.

19.     The Plaintiffs have suffered substantial damage to their residence as a result of sinkhole activity and as a result the Plaintiffs will incur substantial costs to stabilize and repair or replace the subject residence.

20.     As a result of the damages to Plaintiffs' residence caused by sinkhole activity, the Plaintiffs will incur additional costs for debris removal, replacement of trees and shrubs, increased cost of repair due to ordinance and law requirements, additional living expenses and the cost to remove, store and reset Plaintiffs' contents during repair or replacement, all of which Plaintiffs allege are covered by the subject policy attached hereto.

21.     All conditions precedent to recovery under the insurance policy have been performed by the Plaintiffs and/or their representatives or waived by USF&G.

22.     Because of USF&G's breach of the subject insurance policy, the Plaintiffs have had to retain the services of the undersigned attorney and have become obligated to pay the undersigned attorney a reasonable fee.

WHEREFORE, the Plaintiffs, LEROY HAGINS and SONYA HAGINS, demand

judgment for damages, including but not limited to damages to repair and restore the property, damages to trees and shrub, damages for the cost of increased ordinance or law requirements, damages for debris removal, damages for additional living expenses and damages to remove, store and reset Plaintiffs' contents, together with interest, costs and reasonable attorney's fees, pursuant to Section 627.428, Florida Statutes, together with such other and further relief which this Honorable Court may deem proper and demands trial by jury on all issues so triable by jury.

## COUNT II
## DECLARATORY JUDGMENT

23.     This is an action for Declaratory Judgment to determine liability under the subject insurance policy pursuant to Chapter 86, Florida Statutes.

24.     The allegations of Paragraphs one (1) through twenty two (22) are realleged and incorporated by reference herein.

25.     Plaintiffs contend that because the subject policy of insurance provides coverage for sinkhole activity which was confirmed by Defendant's expert and Plaintiffs promptly submitted a claim to Defendant when they reasonable knew that the damage which manifested itself during Defendant's policy period may be caused by a covered peril, namely sinkhole activity, Defendant is liable for the subject loss.

26.     The subject policy provides that there is coverage for sinkhole activity as follows:

**SECTION I - PERILS INSURED AGAINST**

The following peril is added:

> Sinkhole Collapse, meaning actual physical damage arising out of, or caused by, sudden settlement or collapse of the earth supporting such property and only when such settlement or collapse results from subterranean voids created by the action of water on limestone or similar rock formations.

27.     Defendant contends that Plaintiffs failed to comply with the "Duties After Loss" section of the subject policy specifically by failing to give prompt notice of the loss to covered property thereby prejudicing Defendant.

28.     The subject policy specifically list the duties after loss of the insured as follows:

B.      Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1.      Give prompt notice to us or our agent:
2.      Notify the policy in case of loss by theft:
3.      Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in E.6, Credit Card, Electronic Fund Transfer Card or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages:
4.      Protect the property from further damage. If repairs to the property are required, you must:
        a. Make reasonable and necessary repairs to protect the property; and
        b. Keep an accurate record of repair expenses:
5.      Cooperate with us in the investigation of a claim;
6.      Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;
7.      As often as we reasonably require:
        a. Show the damaged property;
        b. Provide us with records and documents we request and permit us to make copies; and
        c. Submit to examination under oath, while not in the presence of another "insured:", and sign the same;
8.      Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
        a. The time and cause of loss:
        b. The interest of all "insureds" and all others in the property involved and all liens on the property:
        c. Other insurance which may cover the loss;
        d. Changes in title or occupancy of the property during the term of the policy;
        e. Specifications of damaged buildings and detailed repair estimates;
        f. The inventory of damaged personal property described in 6. above;
        g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

h. Evidence or affidavit that supports a claim under E.6. Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

29. Defendant specifically attempts to argue that they have no way to confirm that sinkhole activity was the cause of the damage in 2005 as differentiated from other causes of loss despite confirmation that sinkhole activity is the cause of the damage at the present time.

30. Plaintiffs contend that Defendant has erroneously construed the subject insurance policy as well as Florida law and Plaintiffs contend they are entitled to recover damages for sinkhole activity under the subject policy of insurance.

31. Plaintiff contend that the subject policy of insurance is ambiguous as to when a claim should be submitted for a progressive loss which is relatively hidden until it manifest itself in terms of damage to the subject structure.

32. The Duties After Loss section of the subject policy of insurance only provides that prompt notice of a loss be given but does not specifically state that such notice should be given even if the insured is unaware that something other than normal settlement is occurring. Plaintiffs contend that the subject policy does not imput to them the expert knowledge of a geotechnical engineer to see and recognize that the damage seen in 2005 was caused by something more than normal settlement. Plaintiffs contend that they provided prompt notice once they had knowledge that something other than normal settlement may be occurring to the subject residence based on other investigations of neighboring properties and therefore Plaintiffs complied with the duties after loss section by giving prompt notice when they knew or should have known of the loss.

33. Plaintiffs would further argue that the "Manifestation Doctrine" should apply to the case at bar which generally holds the carrier insuring the property at the time of manifestation of property damage is solely responsible for indemnification once coverage is found to exist in losses that are progressive in nature.

34.     Plaintiffs would also argue that Defendant has not sufficiently established that coverage is excluded under the "Duites After Loss" clause based on prejudice because Defendant has no evidence that sinkhole activity was not the cause of the damage to the subject residence in 2005. The only report presented to Plaintiffs by USF&G concludes that "sinkhole activity is the cause of documented damage to the structure, within a reasonable professional probability."

35.     Plaintiffs are in doubt of their rights and obligations under the subject policy as to what is a reasonable interpretation of the "Duites After Loss" clause of the subject policy of insurance and whether Defendant can deny coverage under this provision.  Plaintiffs contend the duty to provide prompt notice under the subject insurance policy should be interpreted to mean when the Plaintiffs reasonable should have known they had a potential loss versus the Defendant's interpretation that they should have submitted the claim when Plaintiffs first noticed the damage, whether or not they had knowledge that the damage may be something other than normal settlement.

36.     An actual controversy of a justiciable nature as to whether Plaintiffs are entitled to recover the necessary cost of land and building stabilization under the subject policy exists between Plaintiffs and USF&G involving the rights and liabilities of Plaintiffs and USF&G under the policy of insurance attached hereto and Plaintiffs are in doubt as to their rights under the subject policy.

37.     The controversy existing between Plaintiffs and USF&G may be determined by a judgment of this Honorable Court without the necessity of other law suits.

38.     Plaintiffs have no other adequate remedy of law.

39.     Because of USF&G's wrongful denial of Plaintiffs' claim, USF&G has materially breached the terms and conditions of the subject policy.

40.     All conditions precedent to recovery under the subject policy has been performed by Plaintiffs and their agent or waived by USF&G.

41.     Because of USF&G's breach of the subject insurance policy, Plaintiffs have had to retain the services of the undersigned attorneys and agreed to pay the undersigned attorneys a reasonable fee.

WHEREFORE, Plaintiffs, LEROY HAGINS and SONYA HAGINS, demands judgment declaring that Defendant, GEOVERA SPECIALTY INSURANCE COMPANY f/k/a USF&G SPECIALTY INSURANCE COMPANY, is required to pay Plaintiffs for the subject sinkhole loss and that judgment be entered for Plaintiffs' damages, together with interest, costs and reasonable attorneys fees pursuant to Section 627.428, Florida Statutes, together with such other and further relief which this Honorable Court may deem proper and demands trial by jury on all issues so triable by jury.

Ronald S. Haynes, Esquire
Ronald S. Haynes, P.A.
Florida Bar No. 0153052
420 W. Brandon Blvd., Suite 200
Brandon, Florida  33511
Telephone:     813/653-0330
Facsimile:      813/653-0335
Attorney for Plaintiffs

Insured   Coverage is provided under this policy for
the residence located at:

LEROY HAGINS
SONYA HAGINS

4408 COBIA DRIVE
TAMPA                    FL 33617

4408 COBIA DR
TAMPA                    FL 33617-8206

**Mail To:  Insured**

*THIS IS A TRUE AND CERTIFIED COPY*

**Producer Name & Address**   #20396
813-948-2355

LEROY HAGINS
SONYA HAGINS

4408 COBIA DRIVE
TAMPA                    FL 33617

CHARLES E BACK
CHARLES E BACK *FFB*
PASCO COUNTY FARM BUREAU
24024 SR 54
LUTZ                     FL 33559

# USF&G Specialty Insurance Company

## AMENDED DECLARATIONS

THIS AMENDED DECLARATION IS ATTACHED TO AND FORMS A PART OF HOMEOWNERS POLICY NUMBER GH20013539

AMENDED DECLARATIONS EFFECTIVE DATE 05/24/04

| Policy Number | Policy Term | Effective Date | Expiration Date |
|---|---|---|---|
| GH20013539 | 12 Month(s) | 05/24/04 | 05/24/05   12:01 AM Standard Time at the Insured Premises. |

**Insurance is provided only with respect to those specific limits of liability applicable thereto:**

| POLICY COVERAGE(S) | LIMITS | | AMOUNT | NEW ANNUAL | | ADD/RETURN | |
|---|---|---|---|---|---|---|---|
| **Section I** | | | Premium | $ | 1,314.00 | $ | |
| A - Dwelling | $ | 110,000 | Inspection Fee | $ | 0.00 | $ | 0.00 |
| B - Other Structures | $ | 11,000 | Policy Fee | $ | 35.00 | $ | |
| C - Personal Property | $ | 77,000 | State Tax | $ | 67.45 | $ | |
| D - Loss of Use | $ | 22,000 | Emergency Fund Surcharge | $ | 2.00 | $ | |
| **Section II** | | | Service Office Fee | $ | 3.37 | $ | |
| E - Personal Liability | $ | 300,000 | Total Policy Amount | $ | 1,421.82 | $ | |
| F - Medical Payments to Others | $ | 2,000 | | | | | |

| Section I Deductible | Windstorm/Hail Deductible | Amount Due Now |
|---|---|---|
| $ 1000.00 | $   5500.00 | $ |

**Forms and endorsements made part of this policy at time of issuance:**

```
CLIL-180 07-02   HO-04-65 10-00   HO-04-96 10-00   US-01-09 04-03   US-04-35 02-03   US-05-01 02-03

HO-00-03 10-00   HO-04-77 10-00   HO-23-70 07-01   US-03-55 04-03   US-04-42 02-03   US-82-01 02-03

HO-01-09 07-01   HO-04-90 10-00   HOPRIV   04-03   US-03-80 02-03   US-04-91 02-03
```

### THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW.

**Authorized Agent:**

RICHARD F. HULL
Hull & Company, Inc.
PO Box 21567, Fort Lauderdale, FL 33335-1567
Surplus Lines Agent, #A125683

Countersigned by:

Countersigned at: Ft. Lauderdale, FL 05/24/04

Persons insured by Surplus Lines Carriers do not have the protection of the Florida Insurance Guaranty Act to the extent of any Right of Recovery for the obligation of an insolvent unlicensed insurer. This policy has been reported to the FSLSO.

THIS DECLARATION PAGE, WITH POLICY PROVISIONS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THE ABOVE NUMBERED HOMEOWNERS POLICY.

**EXHIBIT A**

FFLIAMD-031704          **TO REPORT ANY CLAIM CALL** ... 24 HOURS A DAY.          Insured

**Mortgagee**
Loan #   01890280531

WELLS FARGO HOME MTG INC #685
ISAOA/ATIMA
PO BOX 6850
SPRINGFIELD          OH 45501-6850

# USF&G Specialty Insurance Company

### Policy Number  GH20013539          PAGE 2

MORTGAGEE - LOAN NUMBER ADDED

IN WITNESS WHEREOF, the Company has caused the facsimile signatures of its President and
Secretary to be affixed hereto, and has caused this policy to be signed on the Declarations Page by
an authorized representative of the Company.

**USF&G Specialty Insurance Company**

Jay Fishman
President

Bruce Backberg
Secretary

# HOMEOWNERS 3 – SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

   **a.** Liability for "bodily injury" or "property damage" arising out of the:

   **(1)** Ownership of such vehicle or craft by an "insured";

   **(2)** Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

   **(3)** Entrustment of such vehicle or craft by an "insured" to any person;

   **(4)** Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

   **(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   **b.** For the purpose of this definition:

   **(1)** Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

   **(2)** Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

   **(3)** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

   **(4)** Motor vehicle means a "motor vehicle" as defined in **7.** below.

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "Business" means:

   **a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   **b.** Any other activity engaged in for money or other compensation, except the following:

   **(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

   **(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

   **(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

   **(4)** The rendering of home day care services to a relative of an "insured".

4. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

5. "Insured" means:

   **a.** You and residents of your household who are:

   **(1)** Your relatives; or

   **(2)** Other persons under the age of 21 and in the care of any person named above;

   **b.** A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

   **(1)** 24 and your relative; or

   **(2)** 21 and in your care or the care of a person described in **a.(1)** above; or

Copyright, Insurance Services Office, Inc., 1999

c. Under Section II:

 (1) With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **a.** or **b.** above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

 (2) With respect to a "motor vehicle" to which this policy applies:

  (a) Persons while engaged in your employ or that of any person included in **a.** or **b.** above; or

  (b) Other persons using the vehicle on an "insured location" with your consent.

Under both Sections **I** and **II,** when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

6. "Insured location" means:

 a. The "residence premises";

 b. The part of other premises, other structures and grounds used by you as a residence; and

  (1) Which is shown in the Declarations; or

  (2) Which is acquired by you during the policy period for your use as a residence;

 c. Any premises used by you in connection with a premises described in **a.** and **b.** above;

 d. Any part of a premises:

  (1) Not owned by an "insured"; and

  (2) Where an "insured" is temporarily residing;

 e. Vacant land, other than farm land, owned by or rented to an "insured";

 f. Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

 g. Individual or family cemetery plots or burial vaults of an "insured"; or

 h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

7. "Motor vehicle" means:

 a. A self-propelled land or amphibious vehicle; or

 b. Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

 a. "Bodily injury"; or

 b. "Property damage".

9. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

10. "Residence employee" means:

 a. An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

 b. One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

11. "Residence premises" means:

 a. The one family dwelling where you reside;

 b. The two, three or four family dwelling where you reside in at least one of the family units; or

 c. That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

 Copyright, Insurance Services Office, Inc., 1999

**DEDUCTIBLE**

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I that exceeds the deductible amount shown in the Declarations.

**SECTION I – PROPERTY COVERAGES**

**A. Coverage A – Dwelling**

1. We cover:

   a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

   b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

**B. Coverage B – Other Structures**

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

   a. Land, including land on which the other structures are located;

   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   c. Other structures from which any "business" is conducted; or

   d. Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

**C. Coverage C – Personal Property**

1. **Covered Property**

   We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

   a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or

   b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. **Limit For Property At Other Residences**

   Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

   a. Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

   b. In a newly acquired principal residence for 30 days from the time you begin to move the property there.

3. **Special Limits Of Liability**

   The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage C limit of liability.

   a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

   b. $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

c. $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

d. $1,500 on trailers or semitrailers not used with watercraft of all types.

e. $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

f. $2,500 for loss by theft of firearms and related equipment.

g. $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollow-ware, tea sets, trays and trophies made of or including silver, gold or pewter.

h. $2,500 on property, on the "residence premises", used primarily for "business" purposes.

i. $500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories j. and k. below.

j. $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category j.

k. $1,500 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category k.

### 4. Property Not Covered

We do not cover:

a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

b. Animals, birds or fish;

c. "Motor vehicles".

(1) This includes:

(a) Their accessories, equipment and parts; or

(b) Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

The exclusion of property described in (a) and (b) above applies only while such property is in or upon the "motor vehicle".

(2) We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

(a) Used solely to service an "insured's" residence; or

(b) Designed to assist the handicapped;

d. Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

e. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to; flare-craft and air cushion vehicles;

f. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in E.10. Landlord's Furnishings under Section I – Property Coverages;

h. Property rented or held for rental to others off the "residence premises";

i. "Business" data, including such data stored in:

(1) Books of account, drawings or other paper records; or

(2) Computers and related equipment.

We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

Copyright, Insurance Services Office, Inc., 1999

j. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages; or

k. Water or steam.

## D. Coverage D – Loss Of Use

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

### 1. Additional Living Expense

If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

### 2. Fair Rental Value

If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

### 3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

### 4. Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

## E. Additional Coverages

### 1. Debris Removal

a. We will pay your reasonable expense for the removal of:

(1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

(2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

b. We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

(1) Your tree(s) felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

(2) A neighbor's tree(s) felled by a Peril Insured Against under Coverage **C**;

provided the tree(s):

(3) Damage(s) a covered structure; or

(4) Does not damage a covered structure, but:

(a) Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

(b) Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

### 2. Reasonable Repairs

a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

(1) Increase the limit of liability that applies to the covered property; or

(2) Relieve you of your duties, in case of a loss to covered property, described in **B.4.** under Section I – Conditions.

**3. Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

**a.** Fire or Lightning;

**b.** Explosion;

**c.** Riot or Civil Commotion;

**d.** Aircraft;

**e.** Vehicles not owned or operated by a resident of the "residence premises";

**f.** Vandalism or Malicious Mischief; or

**g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

**a.** We will pay up to $500 for:

(1) The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

(2) Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

(3) Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

(4) Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

**b.** We do not cover:

(1) Use of a credit card, electronic fund transfer card or access device:

(a) By a resident of your household;

(b) By a person who has been entrusted with either type of card or access device; or

(c) If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

(2) Loss arising out of "business" use or dishonesty of an "insured".

**c.** If the coverage in **a.** above applies, the following defense provisions also apply:

(1) We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

(2) If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

(3) We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

Copyright, Insurance Services Office, Inc., 1999

**7. Loss Assessment**

a. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A**, other than:

(1) Earthquake; or

(2) Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

b. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

c. Paragraph **P.** Policy Period under Section **I** – Conditions does not apply to this coverage.

This coverage is additional insurance.

**8. Collapse**

a. With respect to this Additional Coverage:

(1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

(1) The Perils Insured Against named under Coverage **C**;

(2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

c. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **b.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

d. This coverage does not increase the limit of liability that applies to the damaged covered property.

**9. Glass Or Safety Glazing Material**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

**b.** This coverage does not include loss:

  **(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

  **(2)** On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

**c.** This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C,** other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

**a.** You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

  **(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

  **(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

  **(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

**c.** We do not cover:

  **(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

  **(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

  Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C.**

This coverage does not increase the limits of liability that apply to the damaged covered property.

**SECTION I – PERILS INSURED AGAINST**

**A. Coverage A – Dwelling And Coverage B – Other Structures**

  **1.** We insure against risk of direct physical loss to property described in Coverages **A** and **B.**

  **2.** We do not insure, however, for loss:

    **a.** Excluded under Section I – Exclusions;

    **b.** Involving collapse, except as provided in **E.8.** Collapse under Section I – Property Coverages; or

    **c.** Caused by:

     **(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

      **(a)** Maintain heat in the building; or

**(b)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

**(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

    **(a)** Fence, pavement, patio or swimming pool;

    **(b)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

    **(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

    **(d)** Pier, wharf or dock;

**(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**(5)** Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

    **(a)** A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

**(b)** A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

**(6)** Any of the following:

    **(a)** Wear and tear, marring, deterioration;

    **(b)** Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

    **(c)** Smog, rust or other corrosion, or dry rot;

    **(d)** Smoke from agricultural smudging or industrial operations;

    **(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C.**

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

    **(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

    **(g)** Birds, vermin, rodents, or insects; or

    **(h)** Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

**(i)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

**(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section I – Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

## B. Coverage C – Personal Property

We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section I – Exclusions.

### 1. Fire Or Lightning

### 2. Windstorm Or Hail

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

### 3. Explosion

### 4. Riot Or Civil Commotion

### 5. Aircraft

This peril includes self-propelled missiles and spacecraft.

### 6. Vehicles

### 7. Smoke

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

### 8. Vandalism Or Malicious Mischief

### 9. Theft

**a.** This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

**b.** This peril does not include loss caused by theft:

**(1)** Committed by an "insured";

**(2)** In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(3)** From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

**(4)** That occurs off the "residence premises" of:

**(a)** Trailers, semitrailers and campers;

**(b)** Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

**(c)** Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

### 10. Falling Objects

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

### 11. Weight Of Ice, Snow Or Sleet

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

 Copyright, Insurance Services Office, Inc., 1999

## 12. Accidental Discharge Or Overflow Of Water Or Steam

a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

b. This peril does not include loss:

(1) To the system or appliance from which the water or steam escaped;

(2) Caused by or resulting from freezing except as provided in Peril Insured Against 14. Freezing;

(3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

(4) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

d. Section I – Exclusion A.3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

## 13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

## 14. Freezing

a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

## 15. Sudden And Accidental Damage From Artificially Generated Electrical Current

This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

## 16. Volcanic Eruption

This peril does not include loss caused by earthquake, land shock waves or tremors.

## SECTION I – EXCLUSIONS

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

### 1. Ordinance Or Law

Ordinance Or Law means any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion A.1.a. does not apply to the amount of coverage that may be provided for in E.11. Ordinance Or Law under Section I – Property Coverages;

b. The requirements of which result in a loss in value to property; or

c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion A.1. applies whether or not the property has been physically damaged.

### 2. Earth Movement

Earth Movement means:

a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

b. Landslide, mudslide or mudflow;

c. Subsidence or sinkhole; or

d. Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This Exclusion **A.2.** does not apply to loss by theft.

### 3. Water Damage

Water Damage means:

a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

### 4. Power Failure

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

### 5. Neglect

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

### 6. War

War includes the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

### 7. Nuclear Hazard

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in **M.** Nuclear Hazard Clause under Section **I** – Conditions.

### 8. Intentional Loss

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

### 9. Governmental Action

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A, B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

1. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

3. Faulty, inadequate or defective:

a. Planning, zoning, development, surveying, siting;

b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

c. Materials used in repair, construction, renovation or remodeling; or

d. Maintenance;

of part or all of any property whether on or off the "residence premises".

Copyright, Insurance Services Office, Inc., 1999

## SECTION I – CONDITIONS

### A. Insurable Interest And Limit Of Liability

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

2. For more than the applicable limit of liability.

### B. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;

4. Protect the property from further damage. If repairs to the property are required, you must:

   a. Make reasonable and necessary repairs to protect the property; and

   b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us to make copies; and

   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   a. The time and cause of loss;

   b. The interests of all "insureds" and all others in the property involved and all liens on the property;

   c. Other insurance which may cover the loss;

   d. Changes in title or occupancy of the property during the term of the policy;

   e. Specifications of damaged buildings and detailed repair estimates;

   f. The inventory of damaged personal property described in 6. above;

   g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   h. Evidence or affidavit that supports a claim under E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

### C. Loss Settlement

In this Condition C., the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in E.11. Ordinance Or Law under Section I – Property Coverages. Covered property losses are settled as follows:

1. Property of the following types:

   a. Personal property;

   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   c. Structures that are not buildings; and

   d. Grave markers, including mausoleums;

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

      (1) The limit of liability under this policy that applies to the building;

      (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      (3) The necessary amount actually spent to repair or replace the damaged building.

    Copyright, Insurance Services Office, Inc., 1999

If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

**b.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

**(1)** The actual cash value of that part of the building damaged; or

**(2)** That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

**(1)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

**(2)** Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(3)** Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

**(1)** Less than 5% of the amount of insurance in this policy on the building; and

**(2)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **C. Loss Settlement**, provided you notify us of your intent to do so within 180 days after the date of loss.

**D. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

**E. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

**F. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

**1.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**2.** A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**G. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

   Copyright, Insurance Services Office, Inc., 1999

## H. Our Option

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

## I. Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

## J. Abandonment Of Property

We need not accept any property abandoned by an "insured".

## K. Mortgage Clause

1. If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **E.** Appraisal, **G.** Suit Against Us and **I.** Loss Payment under Section **I** – Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

## L. No Benefit To Bailee

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

## M. Nuclear Hazard Clause

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section **I** to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

## N. Recovered Property

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

## O. Volcanic Eruption Period

One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

## P. Policy Period

This policy applies only to loss which occurs during the policy period.

## Q. Concealment Or Fraud

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

### R. Loss Payable Clause

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II – LIABILITY COVERAGES

### A. Coverage E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

### B. Coverage F – Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

### A. "Motor Vehicle Liability"

1. Coverages E and F do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

   a. Is registered for use on public roads or property;

   b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

   c. Is being:

      (1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

      (2) Rented to others;

      (3) Used to carry persons or cargo for a charge; or

      (4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

   a. In dead storage on an "insured location";

   b. Used solely to service an "insured's" residence;

   c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

      (1) Being used to assist a handicapped person; or

      (2) Parked on an "insured location";

   d. Designed for recreational use off public roads and:

      (1) Not owned by an "insured"; or

      (2) Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions B. 6.a., b., d., e. or h.; or

   e. A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

      (1) A golfing facility and is parked or stored there, or being used by an "insured" to:

         (a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

Copyright, Insurance Services Office, Inc., 1999

**(b)** Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

**(c)** Cross public roads at designated points to access other parts of the golfing facility; or

**(2)** A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

## B. "Watercraft Liability"

1. Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

   **a.** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

   **b.** Rented to others;

   **c.** Used to carry persons or cargo for a charge; or

   **d.** Used for any "business" purpose.

2. If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

   **a.** Is stored;

   **b.** Is a sailing vessel, with or without auxiliary power, that is:

   **(1)** Less than 26 feet in overall length; or

   **(2)** 26 feet or more in overall length and not owned by or rented to an "insured"; or

   **c.** Is not a sailing vessel and is powered by:

   **(1)** An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

   **(a)** 50 horsepower or less and not owned by an "insured"; or

   **(b)** More than 50 horsepower and not owned by or rented to an "insured"; or

   **(2)** One or more outboard engines or motors with:

   **(a)** 25 total horsepower or less;

   **(b)** More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

   **(c)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

**(d)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

   **(i)** You declare them at policy inception; or

   **(ii)** Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in **(c)** and **(d)** above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

## C. "Aircraft Liability"

This policy does not cover "aircraft liability".

## D. "Hovercraft Liability"

This policy does not cover "hovercraft liability".

## E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others

Coverages **E** and **F** do not apply to the following:

1. **Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

   **a.** Is of a different kind, quality or degree than initially expected or intended; or

   **b.** Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

2. **"Business"**

   **a.** "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

   **b.** This Exclusion **E.2.** does not apply to:

   **(1)** The rental or holding for rental of an "insured location";

(a) On an occasional basis if used only as a residence;

(b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

### 3. Professional Services

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

### 4. "Insured's" Premises Not An "Insured Location"

"Bodily injury" or "property damage" arising out of a premises:

a. Owned by an "insured";

b. Rented to an "insured"; or

c. Rented to others by an "insured";

that is not an "insured location";

### 5. War

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

### 6. Communicable Disease

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

### 7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

### 8. Controlled Substance

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions A. "Motor Vehicle Liability", B. "Watercraft Liability", C. "Aircraft Liability", D. "Hovercraft Liability" and E.4. "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

### F. Coverage E – Personal Liability

Coverage E does not apply to:

1. Liability:

a. For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in D. Loss Assessment under Section II – Additional Coverages;

b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

(1) That directly relate to the ownership, maintenance or use of an "insured location"; or

(2) Where the liability of others is assumed by you prior to an "occurrence";

unless excluded in a. above or elsewhere in this policy;

2. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

3. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

a. Workers' compensation law;

 Copyright, Insurance Services Office, Inc., 1999 HO 00 03 10 00

b. Non-occupational disability law; or

c. Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this policy:

   a. Is also an insured under a nuclear energy liability policy issued by the:

     (1) Nuclear Energy Liability Insurance Association;

     (2) Mutual Atomic Energy Liability Underwriters;

     (3) Nuclear Insurance Association of Canada;

     or any of their successors; or

   b. Would be an insured under such a policy but for the exhaustion of its limit of liability; or

6. "Bodily injury" to you or an "insured" as defined under Definitions 5.a. or b.

This exclusion also applies to any claim made or suit brought against you or an "insured":

   a. To repay; or

   b. Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

## G. Coverage F – Medical Payments To Others

Coverage F does not apply to "bodily injury":

1. To a "residence employee" if the "bodily injury":

   a. Occurs off the "insured location"; and

   b. Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

3. From any:

   a. Nuclear reaction;

   b. Nuclear radiation; or

   c. Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

   d. Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

## SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

### A. Claim Expenses

We pay:

1. Expenses we incur and costs taxed against an "insured" in any suit we defend;

2. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage E limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

### B. First Aid Expenses

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

### C. Damage To Property Of Others

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

   a. To the extent of any amount recoverable under Section I;

   b. Caused intentionally by an "insured" who is 13 years of age or older;

   c. To property owned by an "insured";

   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

   e. Arising out of:

     (1) A "business" engaged in by an "insured";

     (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

     (3) The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

This exclusion **e.(3)** does not apply to a "motor vehicle" that:

**(a)** Is designed for recreational use off public roads;

**(b)** Is not owned by an "insured"; and

**(c)** At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

## D. Loss Assessment

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

   **a.** "Bodily injury" or "property damage" not excluded from coverage under Section II – Exclusions; or

   **b.** Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

      **(1)** Is elected by the members of a corporation or association of property owners; and

      **(2)** Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph I. Policy Period under Section II – Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

   **a.** One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

   **b.** A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

## SECTION II – CONDITIONS

### A. Limit Of Liability

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** limit of liability shown in the Declarations.

### B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

### C. Duties After "Occurrence"

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   **a.** The identity of the policy and the "named insured" shown in the Declarations;

   **b.** Reasonably available information on the time, place and circumstances of the "occurrence"; and

   **c.** Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

   **a.** To make settlement;

   **b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

     Copyright, Insurance Services Office, Inc., 1999     HO 00 03 10 00

c. With the conduct of suits and attend hearings and trials; and

d. To secure and give evidence and obtain the attendance of witnesses;

5. With respect to **C.** Damage To Property Of Others under Section II – Additional Coverages, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person – Coverage F – Medical Payments To Others**

1. The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

2. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

1. No action can be brought against us unless there has been full compliance with all of the terms under this Section II.

2. No one will have the right to join us as a party to any action against an "insured".

3. Also, no action with respect to Coverage E can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

**SECTIONS I AND II – CONDITIONS**

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

   a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

**c.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   **(1)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

   **(2)** If the risk has changed substantially since the policy was issued.

   This can be done by letting you know at least 30 days before the date cancellation takes effect.

**d.** When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

**3.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**4.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

## D. Nonrenewal

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

## E. Assignment

Assignment of this policy will not be valid unless we give our written consent.

## F. Subrogation

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section II – Additional Coverages.

## G. Death

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

**1.** We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

**2.** "Insured" includes:

   **a.** An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

   **b.** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, Insurance Services Office, Inc., 1999

HO 00 03 10 00

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PROVISIONS – FLORIDA

**SECTION I – PERILS INSURED AGAINST**

The following peril is added:

**SINKHOLE COLLAPSE**

This peril means actual physical damage arising out of, or caused by, sudden settlement or collapse of the earth supporting such property and only when such settlement or collapse results from subterranean voids created by the action of water on limestone or similar rock formations.

Section I – Earth Movement Exclusion 2. does not apply to this peril.

**SECTION I – CONDITIONS**

**E. Appraisal** is deleted and replaced by the following:

**E. Mediation Or Appraisal**

If you and we fail to agree on the amount of loss, either may:

1. Demand a mediation of the loss in accordance with the rules established by the Florida Insurance Department. The loss amount must be $500 or more, prior to application of the deductible; or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount that you request. The settlement in the course of the mediation is binding only if both parties agree, in writing, on a settlement and, you have not rescinded the settlement within 3 business days after reaching settlement. You may not rescind the settlement after cashing or depositing the settlement check or draft we provided to you.

   We will pay the cost of conducting any mediation conference except when you fail to appear at a conference. That conference will then be rescheduled upon your payment of the mediator's fee for that rescheduled conference. However, if we fail to appear at a mediation conference, we will pay your actual cash expenses you incur in attending the conference and also pay the mediator's fee for the rescheduled conference.

2. Demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

   Each party will:

   a. Pay its own appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

If, however, we demanded the mediation and either party rejects the mediation results, you are not required to submit to, or participate in, any appraisal of the loss as a precondition to action against us for failure to pay the loss.

**G. Suit Against Us** is deleted and replaced by the following:

**G. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within 5 years after the date of loss.

**I. Loss Payment** is deleted and replaced by the following:

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable:

1. 20 days after we receive your proof of loss and reach written agreement with you; or

2. 60 days after we receive your proof of loss and:

   a. There is an entry of a final judgment; or

   b. There is a filing of an appraisal award or a mediation settlement with us.

Copyright, Insurance Services Office, Inc., 2000

## SECTION II – EXCLUSIONS

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Paragraph **8. Controlled Substances** is deleted in all forms and Endorsement HO 24 73 and replaced by the following:

**8. Controlled Substances**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined under federal law. Controlled Substances include but are not limited to cocaine, LSD, marijuana, and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

(This is Exclusion **9.** in HO 24 73.)

## SECTION II – CONDITIONS

**A. Limit Of Liability** is deleted and replaced by the following:

**A. Limit Of Liability**

**1.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

**2. Sub-limit Of Liability**

Subject to Paragraph **1.** above, our total liability under Coverage E for damages for which an "insured" is legally liable because of statutorily imposed vicarious parental liability not otherwise excluded is $10,000. This sub-limit is within, but does not increase the Coverage E limit of liability.

**3.** The limit of liability in **1.** above and sub-limit in **2.** above apply regardless of the number of "insureds", claims made or persons injured.

**4.** Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

## SECTIONS I AND II – CONDITIONS

**C. Cancellation**

Paragraphs **2., 3.** and **4.** are deleted and replaced by the following:

**2.** When this policy has been in effect for 90 days or less, we may cancel immediately if there has been a material misstatement or misrepresentation or failure to comply with underwriting requirements.

**3.** We may also cancel this policy subject to the following provisions. A written cancellation notice, together with the specific reasons for cancellation, will be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

**a.** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**b.** When this policy has been in effect for 90 days or less, we may cancel for any reason, except we may not cancel:

**(1)** On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

**(2)** On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may cancel this policy if:

**(a)** The total of such property claim payments for this policy exceeds the current policy limits of coverage for property damage; or

**(b)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

Except as provided in Paragraph **C.2.** above, we will let you know of our action at least 20 days before the date cancellation takes effect.

**c.** When this policy has been in effect for more than 90 days, we may cancel:

**(1)** If there has been a material misstatement;

**(2)** If the risk has changed substantially since the policy was issued;

**(3)** In the event of failure to comply with underwriting requirements established by us within 90 days of the effective date of coverage;

**(4)** If the cancellation is for all insureds under policies of this type for a given class of insureds;

**(5)** On the basis of property insurance claims that are the result of an Act of God, if we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

**(6)** On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim, if:

**(a)** The total of such property claim payments for this policy exceeds the current policy limits of coverage for property damage; or ·

**(b)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

This can be done by letting you know at least 90 days before the date cancellation takes effect.

**4.** When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**5.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D.** **Nonrenewal** is deleted and replaced by the following:

**D. Nonrenewal**

We may elect not to renew this policy. However, we will not nonrenew this policy:

**1.** On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or ·

**2.** On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may elect not to renew this policy if:

**a.** The total of such property claim payments for this policy exceeds the current policy limits of coverage for property damage; or

**b.** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

We may do so by delivering to you or mailing to you at your mailing address shown in the Declarations, written notice, together with the specific reasons for nonrenewal, at least 90 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**F. Subrogation**

The following sentence is added to the first paragraph of this condition:

However, we waive any rights of recovery against the corporation or association of property owners of the condominium where the "residence premises" is located.

The following Condition is added:

**H. Renewal Notification**

If we elect to renew this policy, we will let you know, in writing:

**1.** Of our decision to renew this policy; and

**2.** The amount of renewal premium payable to us.

This notice will be delivered to you or mailed to you at your mailing address shown in the Declarations at least 45 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

All other provisions of this policy apply.

POLICY NUMBER:

**HOMEOWNERS**
**HO 04 65 10 00**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# COVERAGE C INCREASED SPECIAL LIMITS OF LIABILITY

### SCHEDULE*

| | | Increase In Limit Of Liability | Total Limit Of Liability |
|---|---|---|---|
| **SECTION I – PROPERTY COVERAGES** | | | |
| **COVERAGE C – PERSONAL PROPERTY** | | | |
| **3.  Special Limits Of Liability** | | | |
| The special limits of liability are increased as noted below: | | | |
| **Property** | | | |
| **a.** | Money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards. | | |
| **b.** | Securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. | | |
| **e.** | Jewelry, watches, furs, precious and semiprecious stones for loss by theft, but not more than $1,000 for any one article. | $1,000 | $2,500 |
| **f.** | Firearms and related equipment for loss by theft. | | |
| **g.** | Silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware for loss by theft. | | |
| **j.** | Electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources. | | |
| **k.** | Electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources. | | |
| All other provisions of this policy apply. | | | |

*Entries may be left blank if shown elsewhere in this policy for this coverage.

POLICY NUMBER:                                                                                      **HOMEOWNERS**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ORDINANCE OR LAW
# INCREASED AMOUNT OF COVERAGE

### SCHEDULE*

| |
|---|
| **New Total Percentage Amount:**    **25%** |

*Entry may be left blank if shown elsewhere in this policy for this coverage.

**SECTION I – PROPERTY COVERAGES**
**ADDITIONAL COVERAGES**
**11. Ordinance Or Law**
  The total limit of liability that applies:
  **a.** To Coverage **A,** or

**b.** For Form **HO 00 04,** to Building Additions And Alterations;

is increased from 10% to the percentage amount shown in the Schedule above.

  This is Additional Coverage **10.** in Form **HO 00 06.**

All other provisions of this policy apply.

HOMEOWNERS
HO 04 90 10 00

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT

## A. Eligible Property

1. Covered losses to the following property are settled at replacement cost at the time of the loss:

   a. Coverage **C**; and

   b. If covered in this policy:

      (1) Awnings, outdoor antennas and outdoor equipment; and

      (2) Carpeting and household appliances;

      whether or not attached to buildings.

2. This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

   a. Jewelry;

   b. Furs and garments:

      (1) Trimmed with fur; or

      (2) Consisting principally of fur;

   c. Cameras, projection machines, films and related articles of equipment;

   d. Musical equipment and related articles of equipment;

   e. Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

      (1) Pens or pencils;

      (2) Flasks;

      (2) Smoking implements; or

      (3) Jewelry; and

   f. Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

   Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

## B. Ineligible Property

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1. Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

2. Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

3. Articles not maintained in good or workable condition.

4. Articles that are outdated or obsolete and are stored or not being used.

## C. Replacement Cost Loss Settlement Condition

The following loss settlement condition applies to all property described in **A.** above:

1. We will pay no more than the least of the following amounts:

   a. Replacement cost at the time of loss without deduction for depreciation;

   b. The full cost of repair at the time of loss;

   c. The limit of liability that applies to Coverage **C**, if applicable;

   d. Any applicable special limits of liability stated in this policy; or

   e. For loss to any item described in **A.2.a. - f.** above, the limit of liability that applies to the item.

2. If the cost to repair or replace the property described in **A.** above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

3. You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

HOMEOWNERS
HO 04 96 10 00

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

# <u>NO</u> SECTION II – LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
# <u>LIMITED</u> SECTION I – PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

**A.** "Business", as defined in the policy, means:

  **1.** A trade, profession or occupation engaged in on a full-time, part-time, or occasional basis; or

  **2.** Any other activity engaged in for money or other compensation, except the following:

    **a.** One or more activities:

      **(1)** Not described in b. through d. below; and

      **(2)** For which no "insured" receives more than $2000 in total compensation for the 12 months before the beginning of the policy period;

    **b.** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

    **c.** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

    **d.** The rendering of home day care services to a relative of an "insured".

**B.** If an "insured" regularly provides home day care services to a person or persons other than "insureds" as their trade, profession or occupation, that service is a "business".

**C.** If home day care service is not a given "insured's" trade, profession or occupation but is an activity:

  **1.** That an "insured" engages in for money or other compensation; and

  **2.** From which an "insured" receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

the home day care service and other activity will be considered a "business".

**D.** With respect to **C.** above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

  **1.** Described in A.2. above, and

  **2.** Engaged in for money by a single "insured";

may be considered a "business" if the $2000 threshold is exceeded.

**E.** With respect to **A.** through **D.** above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

  **1.** Does not provide:

    **a.** Section **II** coverages. This is because a "business" of an "insured" is excluded under **E.2.** of Section **II** – Exclusions;

    **b.** Coverage, under Section **I**, for other structures from which any "business" is conducted; and

  **2.** Limits Section I coverage, under Coverage **C** – Special Limits of Liability, for "business" property:

    **a.** On the "residence premises" for the home day care "business" to $2,500. This is because Category **h.** (**e.** in Form **HO 00 08**) imposes that limit on "business" property on the "residence premises";

    **b.** Away from the "residence premises" for the home day care "business" to $500. This is because Category **i.** (**f.** in Form **HO 00 08**) imposes that limit on "business" property away from the "residence premises". Category **i.** does not apply to property described in Categories **j.** and **k.** (**g.** and **h.** respectively in Form **HO 00 08**).

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WINDSTORM EXTERIOR PAINT OR WATERPROOFING EXCLUSION – SEACOAST – FLORIDA

**A. Exclusion**

Coverage for any building or structure under this policy excludes loss caused by:

**1.** Windstorm or hail;

**2.** Windstorm during a hurricane;

to paint or waterproofing material applied to the exterior of the building or structure.

**B. Hurricane Described**

**1.** A hurricane means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service.

**2.** A hurricane occurrence:

**a.** Begins at the time a hurricane watch or warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service; and

**b.** Ends 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

All other provisions of this policy apply.

 Copyright, Insurance Services Office, Inc.,  2000

## USF&G Specialty Insurance Company's Privacy Policy

Thank you for selecting USF&G Specialty Insurance Company as your homeowners insurer. At USF&G Specialty Insurance Company, a member of The St. Paul Companies, we recognize that privacy is important to you. That is why we are committed to protecting your privacy through the adoption of the following privacy principles:

**Collection of Information**
We collect, obtain and use information about you, including members of your household, only where we believe that it will help us or is necessary to provide you products and services or otherwise conduct our business. We collect nonpublic personal financial information about you from the following sources:

- Information we receive from you or through your agent or broker on applications or other forms;
- Information we receive from or about you in the process of adjusting claims;
- Information about your coverages and loss activity with other carriers; and
- Information we receive from a consumer reporting agency.

Such information includes identifying information such as your name, address, and social security number; financial information such as your income, payment history or credit history; and, under certain circumstances, health information such as information about an illness, disability or injury. It could also include information on claims with other insurance companies and us and the condition and maintenance of your property.

Any information obtained from a report prepared by an insurance-support organization may be retained by the insurance support organization and disclosed to other persons.

**Disclosure of Information**
We usually do not disclose nonpublic personal information about you without your consent. However, in some circumstances we may disclose information to others without your prior authorization:

- Information from your application or other forms, such as your name, address and social security number;
- Information about your transactions with us, our affiliates or others, such as your policy coverage, premiums and payment history; and
- Information about your claim history.

We do not disclose any personal information about you to anyone unless allowed by law. We may disclose personal information about you to:

- State insurance departments, for their regulation of our business;

- Otl⋯ ⋯t authorities;
- Ou⋯ ⋯rokers as necessary to conduct our business;
- Org⋯ ⋯t perform underwriting and claims investigations;
- Anc⋯ ⋯e company to which you have applied for a policy or sub⋯ ⋯;
- Ins⋯ ⋯rt agencies, law enforcement agencies and our reir⋯
- Any⋯ ⋯rty, as permitted or required by law.

**Most impo⋯** ⋯G Specialty Insurance Company does not and will
**not disclos⋯** ⋯ur nonpublic personal information to anyone for
**marketing ⋯**

**Confidenti⋯** ⋯rity
We restrict⋯ ⋯npublic personal information about you to those who
need it to ⋯ ⋯urance needs and to maintain and improve customer
service.  V⋯ ⋯physical, electronic, and procedural safeguards that
comply wit⋯ ⋯state laws and regulations to guard your nonpublic
personal inf⋯

**Your Right⋯** ⋯d **Correct Information**
Upon your v⋯ ⋯t, we will send you a copy of relevant information we
have about ⋯ ⋯tion with your application for coverage. Please address
your reques⋯ ⋯ent Affairs, The St. Paul Companies, Inc., Mail Code
514C, 385⋯ ⋯Street, St. Paul, MN 55102. If you feel that our
information ⋯ ⋯t us know and we will review it.  If we agree, we will
correct our i⋯ ⋯o not agree, you may file a short statement of dispute
with us. Thi⋯ ⋯ill be included with any information disclosure we make
in the futur⋯ ⋯anyone you designate who may have received such
information i⋯ ⋯years, or as otherwise required by law.

**Disclosure⋯** ⋯n **of Former Customers' Information**
We may dis⋯ ⋯personal information we have collected, as described
above. How⋯ ⋯you no longer have a customer relationship with us, we
will continu⋯ ⋯our privacy policies and practices to protect your
information.

**Changes in⋯** ⋯cy
We may ch⋯ ⋯dify our policy regarding the treatment of personal
information ⋯ ⋯Before we do so, we will notify you and provide an
updated noti⋯

T CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SPECIALTY INSURANCE COMPANY
## SPECIAL PROVISIONS

DEFINIT.

The defir
followi.,

8.  "Occ                             accident, including
                                     ated exposure to
                                     .e general harmful
        c                            .sults, during the

a.  "Bodi
b.  "Pro,

    Assu                             .t an "occurrence",
    whel.                            ..ted by or at the
    · directi

SECTION.

The follo                            .ided to Paragraph
A:

Asbesto

Asbesto.                             presence or effects
of any fo                            .ad.

SECTION

The follo                            are added to E.
Coverage                             al  Liability  And
Coverage                             .ents to Others:

Asbesto

a.  "Boc:                            .t of the absorption,
    ingest.                          .1 of, or prolonged
    expos                            asbestos or lead,

b.  "Pro,                            .g out of any form of
    asbes'

c.  Any lo                           .se arising out of any
    reque:                           .r, or statutory or
    regula                           that any "insured"
    test f                           .1p, remove, contain,
    treat,                           .lize, or in any way

respond to, or assess the effects of, any
form of asbestos or lead.

Because asbestos and lead are pollutants, this
exclusion applies in addition to the Pollution
Exclusion  and  any  other  pollution-related
exclusion made a part of this policy.

### Assault or Battery

"Bodily injury" or "property damage" arising out
of assault or battery, whether or not committed
by or at the direction of an "insured".

### Pollution

a.  "Bodily injury" or "property damage" arising
    out of the actual, alleged, or threatened
    discharge, dispersal, seepage, migration,
    release, or escape of pollutants at, on, in or
    from any "insured location"; or

b.  Any loss, cost, or expense arising out of any
    request, demand, order, or statutory or
    regulatory requirement that any "insured"
    test for, monitor, clean up, remove, contain,
    treat, detoxify, or neutralize, or in any way
    respond  to,  or  assess  the  effects  of,
    pollutants.

Pollutants means any solid, liquid or thermal
irritant or contaminant, including smoke, vapor,
soot, fumes, acids, alkalis, chemicals and waste.
Waste includes materials to be recycled,
reconditioned or reclaimed.

This exclusion does not apply to "bodily injury"
or "property damage" caused by heat, smoke, or
fumes from a hostile fire. As used in this
exclusion, a hostile fire means one which
becomes uncontrollable or breaks out from
where it is intended to be.

### Punitive or Exemplary Damages

Punitive or exemplary damages, or any costs or
interest attributable to such damages.

SECTIC ⋮                          'S

The foll⋮

**Service** ⋮

If we fa⋮                    ⋮ed to be due
under t⋮                    ⋮ve will, at your
request,⋮                    ⋮ of a court of
competer⋮                    ⋮United States.
Service ⋮                    ⋮ay be made on
General ⋮                    ⋮s Department,
The St⋮                    ⋮reet, St. Paul,
Minnes⋮                    ⋮representative.
Service ⋮                    ⋮t may also be
made on ⋮                    ⋮mmissioner, or
Director ⋮                    ⋮e in which the
suit is ⋮                    ⋮provides.  We
designa⋮                    ⋮icer,  or  that
officer's ⋮                    ⋮y of the papers
to us.

For the St⋮              ⋮ authorize Lori
Castaned⋮              ⋮s Drive, Suite
100, Sac⋮              ⋮33, to be served
and to ma⋮

Nothing ⋮              ⋮tes a waiver of
our right⋮              ⋮n any court of
compete⋮              ⋮nited States, to
remove ⋮              ⋮States District
Court, or ⋮              ⋮case to another
court as ⋮

All other ⋮              apply.

...IS ...CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**LIM...E!**   ...T, MOLD, ROT, OR BACTERIA COVERAGE AND
...EEPAGE OR LEAKAGE COVERAGE
**FORM HO 00 03 ONLY**

**DEFIN...ON...**

The fol...vin... ...:...ed:

"Bacter...m... ...n of bacterium,
or any... ...co... ...r byproduct
produc... or... ...cterium.

"Mold... th...

**a.** An... /pe... ...ildew;

**b.** An... the... ...jus; or

**c.** An... nyo... ...e or byproduct
    pro...ce... d... ...n mold, mildew,
    or o...er...

"Per po...y p... ...kage combined
total su... mit... ...imit of liability
that app...es t... ...of all of the
following whi... ...one policy
period:

**a.** cov...ed... ...sulting from
    wat...or... ...leaks, or the
    pres...nce... ...humidity,
    moi...ure... ...s, above the
    sur...ce o... ...period of 14
    day...or n...

**b.** cove...ed... ...perty damage"
    arisi...g o... ...that seeps or
    leak... or... ...densation of
    hun...lity... ...hat occurs,
    abo...e th... ...nd over a
    peri...d of... n...

This com...bin... ...C... ...nit is the most
we'll pay reg... ...e... ...er or type of
coverag...s th... ...y... ...mber of
premises ins... ...t... ...y, the number
of person...s in... ...:... ...erty is
damage..., or... ...rrences" or
claims m...ide... ...n... ...uded in, but
does no... ncr... ...a... ...limits of liability

---

under Sections I and II of your policy as shown
on the declarations page.

"Per policy period mold combined total sublimit"
means the $5,000 limit of liability that applies to
the combined total of all of the following which
occur during any one policy period:

**a.** covered loss caused by smog, rust or other
    corrosion, "mold or other fungi", wet or dry
    rot, or "bacteria" resulting from any Peril
    Insured Against; and

**b.** covered "bodily injury" or "property damage"
    arising out of smog, rust or other corrosion,
    "mold or other fungi", wet or dry rot, or
    "bacteria".

This combined total $5,000 sublimit is the most
we'll pay regardless of the number or type of
coverages that may apply, the number of
premises insured under this policy, the number
of persons injured or whose property is
damaged, the number of "occurrences" or claims
made, or the number or type of smog, rust or
other corrosion, "mold or other fungi", wet or dry
rot, or "bacteria" that caused the loss, injury, or
damage. This sublimit is included in, but does
not increase, the maximum limits of liability
under Sections I and II of your policy as shown
on the declarations page.

**SECTION I – PROPERTY COVERAGES**

The first paragraph of **D. Coverage D – Loss of
Use** is replaced by the following:

The limit of liability for Coverage D is the total
limit for the coverages in **1.** Additional Living
Expense, **2.** Fair Rental Value and **3.** Civil
Authority Prohibits Use below.

However, loss of use covered under these three
coverages caused by:

**a.** smog, rust or other corrosion, "mold or other
    fungi", wet or dry rot, or "bacteria" is subject

to t'     olic,         combined total
subiin    ind

**b.** water   am !!  s      c leaks, or the
prese   r conc         c humidity,
moist'  r vapo         s, above the
suria   ne gr           period of 14
days    re is s   i     h a "per policy
perioc  age c  e        ombined total
sublir

The follow  s adde   o     tional
**Coverage**

**Seepage    akage**

We insure   irect p  s    s to property
described   verage   A    F caused by:

**a.** water   am th t s    o leaks; or

**b.** the p   e or    c    c of humidity,
moist   r vapo tha    u s;

above the    ce of t  g    d ver a period of
14 days o    e. How   v    c coverage is
subject to    per pol   j    l eepage or
leakage c   ed tot   i    t'

**SECTION    ERILS NS    D AGAINST**

Paragraph    **(5)** ar  2.   c of **A.**
**Coverage   )welli g A    c verage B –**
**Other Stru   es are** dele

The followi   added o    n rage C –
**Personal I   erty:**

**Seepage c   akage**

This peril n   s the seepa   r eakage of
water or st   or the res   e condensation
of humidity   sture,  r va   r ove the
surface of   round.

However, I   aused by:

**a.** water c   am th  se   or eaks; or

**b.** the pre   e or co de   o of humidity,
moistu   vapor ha   ur s;

above the s   ce of the gr   l ver a period of
14 days or   is subject t   e per policy
period see;   or leakage   t ed total
sublimit".

## SECTION I – EXCLUSIONS

The following exclusion is added to Paragraph **A.**:

**Smog, Rust Or Other Corrosion, "Mold Or Other Fungi", Wet Or Dry Rot, Or "Bacteria"**

Smog, Rust Or Other Corrosion, "Mold Or Other Fungi", Wet Or Dry Rot, Or "Bacteria" means the presence, growth, proliferation, spread or any activity of smog, rust or other corrosion, "mold or other fungi", wet or dry rot, or "bacteria".

Loss caused by smog, rust or other corrosion, "mold or other fungi", wet or dry rot, or "bacteria" resulting from a Peril Insured Against is covered. However, such loss is subject to the "per policy period mold combined total sublimit".

## SECTION II – CONDITIONS

The following is added to **A. Limit of Liability**:

However, our liability under Coverages **E** and **F** for any covered "bodily injury" or "property damage" arising out of:

**a.** smog, rust or other corrosion, "mold or other fungi", or wet or dry rot, or "bacteria" is subject to the "per policy period mold combined total sublimit"; and

**b.** water or steam that seeps or leaks, or the presence or condensation of humidity, moisture, or vapor that occurs, above the surface of the ground over a period of 14 days or more is subject to the "per policy period seepage or leakage combined total sublimit".

Paragraph **B. Severability of Insurance** is replaced by the following:

This insurance applies separately to each "insured" except with respect to the "per policy period mold combined total sublimit" and the "per policy period seepage or leakage combined total sublimit". This condition will not increase our limit of liability for any one "occurrence".

All other provisions of this policy apply.

**THI͡**   ͙ ͙͝   **CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ͞ARD AND BIOCHEMICAL RELEASE FROM TERRORISM EXCLUSIONS

**SECTI͞**

The fo͙͙͝ ͙ ͙͙͝ ͙ ͙ ͝led to Paragraph A.:

**Bioche͞**  ͙ ͙͙ ͝      ͙rrorism

Bioche͞ ͙ ͙ ͙ ͙ ͝ rorism means the direct ͝ ͙ ͙ ͙ ͝erms, disease or other ͙ ͙ ͙ ͙ ͝ ͝s, pathogens, or poisons͙ ͙ ͙ ͙ ͙͝ ͙al ͙ ͙oup that releases such i͙ ͙ ͙ ͙͝ti͝ ͙or threatening to commit͙ ͙ ͙ of ͙͝ce ͙lence or danger against ͙ ͙͝ersons, ͙͝rg͙ ͙tions, or property that:

**a.** Intim͙ ͙ ͙͝ne ͙ ͙ ͙ ͝ or appears to a reas͙ ͙ ͙ ͙͝ so͙ ͙ ͙ ͝s  intended  to inti͙ ͙ ͙ ͝o ͙ ͙ ͙any government aut͙ ͙ ͙ ͙ ͝ ͙ ͙ ͙pulation or any segm͙ ͙ ͙ ͙y cv͙͝ ͝ ͙ulation;

**b.** Dis͙ ͙ ͙ ͝ ͙ ͙ ͝s t ͙ ͙easonable person was i͙ ͙ ͙ ͝ed to ͙ ͝rup ͙ ͙y segment of the econo͙ ͝or

**c.** Invol͙ ͙ ͙ ͙ ͝ app ͙ ͙ ͝easonable person was ͙ ͙ ͙͝ed to ͙ ͝v ͙ ͙lease of any such subs͙ ͙ ͙

**SECTIO͞** ͙ ͙ ͝OND͙ ͝ r͙ ͝o͙

If this e͙ ͙ ͝ ͙ ͝ment i͙ ͙ ͝tt ͙ ͙d to Form HO 00 03 or HO͙ ͙ ͝ JC, Par͙ ͙͝gra ͙ ͙͝.3 is replaced by the follow͙

If this e͙ ͙ ͝ ͙ement ͙ ͙͝tt͙ ͝d to Form HO 00 04, Para͙ ͙ ͝ ͙ L.3 is ͙ ͝ed͙ ͙ ͝y the following:

**3.** This ͙ ͙ ͙ ͝ ͝os ͙no͙ ͙ ͙under Section I to loss ͙ ͙ ͙ ͝ d ͝irectly ͙ ͙irectly by nuclear haza͙ ͙ ͝ ͙ect los͙ by ͙ ͙resulting from the nucle͙ ͙ ͙ ͝tard ͙is ͙ ͝ ͙d to the extent requir͙ ͙ ͙ y law.

**SECTION II – EXCLUSIONS**

The following exclusion is added to Paragraph E.:

**Biochemical Release From Terrorism**

"Bodily injury" or "property damage" arising out of or in connection with the direct or indirect release of germs, disease or other contagions, contaminants, pathogens, or poisons by any individual or group that releases such items by committing, or threatening to commit, an act of force violence or danger against any persons, organizations, or property that:

**a.** Intimidates or coerces, or appears to a reasonable person was intended to intimidate or coerce, any civilian population or any segment of any civilian population;

**b.** Disrupts, or appears to a reasonable person was intended to disrupt, any segment of the economy; or

**c.** Involves, or appears to a reasonable person was intended to involve, release of any such substances.

All other provisions of this policy apply.

# ...'S ASSESSMENT COVERAGE

**1.** ... ... -- **Residence**
... ...

... ...p... ... ... of **$5,000** for all
... ssm... ... ... under:

... Sectio... A... ic... **Coverage E.7.**
... oss... ... ... **Additional**
... ove... ... orm **HO 00 06**);
... ...

... cti... ...d ... al **Coverage D.**
... ss... ... cr

... 3. th ... ... a... e;

... ...g out... a... ...gl... ...ss.

... **Speci...** ...

... V... w... ... y... ...e than **$1,000** of
... ... ... at results from a
... duc... ... ...licy of insurance
... rch... d t... a... oration or
... soc... on... or... erty owners.

... **Section** ... c... **...ons**

... cti... ... ...n **F.1.a.** does
... ct ap... ... verage.

... h... r p... c... is policy apply.

US 04 42 (02-03)

°T: NDORSE ENT **CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MASTER ENDORSEMENT

ile on , Vi ious Dogs, Unfenced Pools, Concealment or Fraud)
**FORM HO 00 03 ONLY**

**DEFINI**

The de i of nce premises" is re-
placed b follo g

**11.** "Re e pr is mea s:

**a.** ne f il; velling where you re-

**b.** vo, e of fou family dwelling
v e you esi in at least one of the
unit r

**c.** T art other building where
side,

and whic hown as "resi lence premises"
in the Dc ions

"Reside emis " incl des other struc-
tures and nds at the location.

However den pr ses" does not include
mobile h s, whether o not they are perma-
nently aff o a foun tion.

The follow definition is dded

"Vicious e" means cani e of any breed
which any ured" kno has attacked, bitten,
or has c ise c se bodily injury" to any
person.

**SECTION** ROPE RTY COVE RAGES

The follow is ad ed Cov rage C – Per-
**sonal Pro** y, 4. Prope y No Covered:

Mobile ho , or th ir c tents, whether or not
permanen fixed to a ndation.

**SECTION** COND TIO 

**Q. Conce** ent Or Fraud is deleted.

## SECTION II – EXCLUSIONS

The following exclusions are added to **E. Coverage E – Personal Liability And Coverage F – Medical Payments to Others:**

**Mobile Homes**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use, or control of any mobile home. This exclusion applies whether or not the mobile home is permanently affixed to a foundation.

**Vicious Dogs**

"Bodily injury" or "property damage" arising out of any canine owned by or in the care of any "insured" that is a:

**a.** "vicious canine";

**b.** Staffordshire Bull Terrier;

**c.** American Pit Bull Terrier;

**d.** Rottweiler; or

**e.** Doberman Pinscher.

We will consider a canine to be a Staffordshire Bull Terrier, American Pit Bull Terrier, Rottweiler, or Doberman Pinscher if its lineage contains at least 50% of that breed.

**Unfenced Pools**

"Bodily injury" arising out of any "insured's" ownership or control of a swimming pool which is not enclosed, fenced, or otherwise safeguarded as required by any applicable ordinance or law.

## SECTION II – CONDITIONS

**J. Concealment Or Fraud** is deleted.

US 04 42 (02-03)

**SECTION**    D II –         ·IONS

The follow·    ·nditior      ·d:

**Conceal**m    r **Frau**

The entire      · will b          ·le ·· our option if,
regardless      ·ether           to a· oss, any "in-
sured", the·    ·nt, or ·        ker:

1.  intentio·      conc·          nisr· oresents any
    materi·        or cir         ·ce;

2.  engag·         raudu·         ·luct· or

3.  makes          stater

relating to ·   ·suran·          ·led  ·nder any part
of this poli·

We will cor    · all in·        ·n pr· vided, or that
should hav·    ·n pro·          ·n the on-line appli-
cation for t·    ·licy to        ·erial

All other p·    ·ons of          ·:y a· ply.

THI ¯DOR . CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INFLATION GUARD

**SECT¹ – CON**

The fo¹ ɟ cond₁ d:

**Inflati ard**

For e¹ licy p¹ ll re-evaluate the
cost in e use ¹ ₂ the approximate
replac¹ cost ( ⅟g and structures
covere er Co. ¹ his may result in
an inc. . in the ɔremium you are
charge an in ₂ limits of liability
for Cov ⋅s A, B.

Any a¹ ent in ⋅sulting from the
applica¹ ⋅f the ⋅st index will be
made b on the tes used by us at
the tim⋅ e char

All oth⋅ isions ⋅ apply.

**THIS ENDOR~~SEMENT~~ CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ~~PREMIUM~~ JM PAYMENT AND REFUND WAIVER

**SECTIONS I AND ~~II CONDI~~TIONS**

The following condi~~tion is added~~:

**Premium Payment ~~and Refund~~ Waiver**

We will waive your ~~payment to~~ us of additional
premium due on t~~his policy~~ which is $5.00 or
less, and we will n~~ot refund~~ ou return premium
due on this policy w~~hich is $5.0~~0 or less.

All other provisions ~~of this polic~~y apply.

**THI⬚ ⬚NDⵔ⬚ ⬚ ⬚E⬚⬚ CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**⬚⬚ ⬚ ⬚C⬚ ⵔNT COST PROTECTION – UP TO 125%**

**SECTIⵔ⬚ – ⵔONⵔITIⵔNS**

The fo⬚owing c⬚⬚ⵔtion ⬚ a⬚⬚ ⵔ:

**Repla⬚⬚men⬚ ⬚⬚⬚ ⬚i⬚ ⬚ec**

**If you ⬚.a⬚⬚⬚**

1. A⬚⬚w⬚ ⬚⬚⬚ ⬚ ⬚ s⬚ t⬚ ⬚nit of liability for Coverg⬚ ⬚ ⬚⬚ ⬚ ⬚ ⬚r ⬚m in accordance with:
   a. ⬚ ⬚ pro⬚⬚ ⬚ e ⬚u⬚ ⬚s we make; and
   b. ⬚ny i⬚ ⬚⬚ es ⬚in⬚ ⬚n; .

2. Noti⬚ ⬚ u⬚ ⬚ ⬚ ⬚ ⬚ d of completion, of any ⬚⬚era⬚⬚ ⬚⬚ ⬚e ⬚ing covered under Cov⬚r⬚⬚⬚ ⬚⬚ ⬚ic⬚ ⵔrease the dwell- ing's repl⬚⬚⬚ ⬚ ⬚st ⬚ ⬚⬚% or more; and

3. Elec⬚⬚d to ⬚⬚⬚i⬚ or ⬚ ⬚ce the dwelling covered under Cover⬚⬚ A after it is dam- aged;

**We will:**

4. Increa⬚e ⬚ ⬚nit ⬚f lia⬚ ⬚ for Coverage A to equal t⬚⬚ ⬚el⬚ ⬚g's ⬚rent replacement cost, up to ⬚ maxi⬚um ⬚25% of the limit of liability f⬚⬚ ⵔⵔv⬚⬚ag⬚ ⬚f the amount of loss to the ⬚⬚ ⬚⬚ is ⬚ ⬚ than the limit of liability sho⬚⬚ ⬚ ⬚⬚ De ⬚ations;

5. Increa⬚e, by th⬚ sa⬚⬚ p⬚⬚ ⬚entage applied to Coverage A, t⬚e l⬚⬚its ⬚iability for Cover- ages B, C ⬚⬚d D ⬚lov ⬚r, we will do this only if the ⬚⬚er⬚⬚ A ⬚it of liability is in- creased u⬚⬚ ⬚par ⬚gra⬚ 4. above as a re- sult of a Cov⬚⬚⬚⬚ ⬚ lo⬚ ⬚nd

6. Adjust the pr⬚⬚⬚⬚⬚ fro⬚ ⬚e time of loss for the remaind⬚⬚ ⬚f ⬚⬚e p ⬚y term based on the increased l⬚⬚its of li⬚ ity.

If you comply with paragraphs 1, 2, and 3 of the Replacement Cost Protection condition, Section I Condition C., Loss Settlement paragraph 2. is replaced by the following:

2. Buildings under Coverage A or B at re- placement cost without deduction for depreciation, subject to the following:

   a. We will pay not more than the least of the following amounts:

      (1) The limit of liability that applies to the building, adjusted as pro- vided in paragraphs 4 and 5 of the Replacement Cost Protec- tion condition;

      (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      (3) The necessary amount actually spent to repair or replace the damaged building.

      If the building is rebuilt at a new premises, the cost described in (2) above is limited to the cost which would have been incurred if the building had been built at the origi- nal premises.

   b. We will pay no more than the actual cash value of the damage until ac- tual repair or replacement is com- plete.

   c. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition C. Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

*Constitution State Services*

P.O. Box 30181
Tampa FL 33630-3181
813-890-4277/Fax 800-928-1238

July 20, 2009

Larry & Sonya Hagins
c/o Ronald Haynes
420 W. Brandon Blvd., Suite 203
Brandon, FL 33511

**Sent by certified mail**

RE:    Policy Holder:          Larry & Sonya Hagins
        Claim Number:         A9C0877
        Date of Loss:          5/1/2005
        Policy Number:        GH20013539
        Underwriting Company:  USF&G Specialty Insurance Company

### Sinkhole Testing and Notice of Rights

Dear Mr. & Mrs. Hagins:

The following is a rather lengthy letter informing you of certain rights, duties, and responsibilities you and USF&G Specialty Insurance Company have regarding your claim. Please take the time to read the letter so that you are fully aware of these rights, duties, and responsibilities.

Based upon the damage claimed and the potential for there to be sinkhole activity on your property causing the damage, we engaged the services of an engineer and a professional geologist to perform an investigation at your property that includes certain types of tests. The purpose of this investigation is to confirm whether or not a sinkhole loss exists at your property. Once their investigation is complete, the engineer and geologist will issue a report. You will be provided with a copy of this report. We will pay all the fees and costs associated with this investigation.

If the engineer concludes there is a sinkhole loss at your property, the engineer will make a recommendation regarding the repair of your property. **If we determine that coverage applies to this loss**, we will pay the costs associated with stabilizing the land, stabilizing the structure, and repairing the structure's foundation in accordance with the recommendations made by the engineer and in consultation with you. (In most cases, the "structure" is your house.) These repairs will be paid pursuant to Florida law and the terms and conditions of



EXHIBIT

B

STATE LEGAL®

your policy. We will also pay for the necessary cosmetic repairs to the structure and content damage, if any, pursuant to the terms and conditions of your policy.

We have engaged HSA Engineers & Scientists to perform the investigation at your property.

Please be aware that if the insurer pays a claim for sinkhole loss, Florida law requires the insurer and the insured to make certain disclosures. If the insurer pays a sinkhole loss, the insurer must file with the county clerk's office a copy of the engineer and professional geologist's report and certification confirming that the cause of the property's physical and structural damage is sinkhole activity. The county clerk will record the report and certification with the property's parcel number. If the insured ever sells the property, the insured must disclose to the buyer that a sinkhole loss claim has been paid and whether or not the full amount of the settlement proceeds was used to repair the sinkhole damage.

Sometimes, the investigation of an insured's property concludes that there is not a sinkhole loss at the property. In such situations, sometimes the cause of damage identified by the investigation is not covered under the policy and all relevant endorsements. Some of the policy provisions that might result in USF&G Specialty Insurance Company's denial of coverage for these types of claims are as follows:

**SECTION I-PERILS INSURED AGAINST**, states, in part:

## A. Coverage A – Dwelling and Coverage B – Other Structures

1. We insure against risk of direct physical loss to property described in Coverages A & B.
2. We do not insure, however, for loss:
    a. Excluded under Section I – Exclusions;
    b. Involving collapse, except as provided in E8 Collapse under Section I – Property Coverages; or
    c. Caused by:
        (6) (a) wear and tear, marring, deterioration;
        (6) (f) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings

        \* \* \*

## Section I – Exclusions

1. We do not insure for loss caused directly or indirectly by any of the following, regardless of any other cause or event contributing concurrently or in any sequence to the loss:

    \* \* \*

## 3. Earth Movement
Earth Movement means:

a. earthquake including land shock waves or tremors
   before, during or after a volcanic eruption;
b. landslide, mudslide or mudflow;
c. Subsidence or sinkhole; or
d. Any other earth movement including earth sinking, rising or
   shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

**B.**     We do not insure for loss to property described
           in Coverages A and B caused by any of the fol-
           lowing. However, any ensuing loss to property
           described in Coverages A and B not precluded by any other provison in this
           policy is covered.

   **3.** Faulty, inadequate or defective:

           (a) Planning, zoning, development, survey-
               ing, siting;

           (b) Design, specifications, workmanship,
               repair, construction, renovation,
               remodeling, grading, compaction;

           (c) Materials used in repair, construction,
               renovation or remodeling;

           (d) maintenance;

           of part or all of any property whether on or
           off the "residence premises."

Please be advised that the above-quoted policy and endorsement language is not meant to be a complete and final list of policy defenses, nor is it meant to be a waiver of any applicable defenses. USF&G Specialty Insurance Coompnay reserves its right to assert any and all applicable defenses. Please be advised that the sinkhole exclusion noted above has been removed via endorsement HO 01 09 07 01 which provides in part:

## SECTION I – PERILS INSURED AGAINST

The following peril is added:

### Sinkhole collapse

This peril means actual physical damage arising out of, or caused by, sudden settlement or collapse of the earth supporting such property and only when such settlement or collapse

results from subterranean voids created by the action of water on limestone or similar rock formations.

**Attached to this letter is a statement of notices we, the insurer, are required by Florida law to give to you, the insured. These notices inform you of some of our legal responsibilities owed to you and some of your legal rights. Please review the attached notices carefully.**

We realize that this letter contains much information that might take some time to review. However, we want to provide you with information that is important and relevant to your claim, so that you are fully aware of your rights, duties, and responsibilities as well as USF&G Specialty Insurance Company's rights, duties, and responsibilities.

Very truly yours,

Howard L. Gayheart
Senior Technical Specialist – Property
Travelers

## THE FOLLOWING NOTICES AND INFORMATION ARE REQUIRED TO BE GIVEN TO A POLICYHOLDER AFTER AN INITIAL INSPECTION OF HIS/HER HOME HAS BEEN MADE BY THE INSURER OR ITS REPRESENTATIVE

(1) Upon receipt of an insured's claim for a loss, the insurer must inspect the insured's premises to determine if there has been physical damage to the insured structure which may be the result of sinkhole activity.

(2) The insurer is required by Florida law to engage an engineer and professional geologist to verify or eliminate sinkhole loss if:

(a) at the initial inspection the insurer is unable to identify a valid cause of the damage;

(b) at the initial inspection the insurer discovers damage to the structure which is consistent with sinkhole loss;

(c) the insured demands testing after the insurer's initial inspection; or

(d) the insurer denies the insured's claim without performing tests, and the insured demands testing, in writing, after the denial.

(3) If a sinkhole loss is verified/confirmed by the engineer and geologist, the insurer must abide by the following requirements:

(a) the insurer will engage an engineer to make recommendations regarding land and building/structure stabilization and foundation repair. The insurer also may engage a structural engineer to make recommendations as to the cosmetic repair of the structure;

(b) The insurer will stabilize the land and building/structure and repair the foundation in accordance with the recommendations of the engineer, and in consultation with the insured, subject to the coverage and terms of the insured's policy;

(c) The insurer will pay for other repairs to the structure and contents in accordance with the terms of the policy;

(d) Except for underpinning or grouting or any other repair technique performed below the existing foundation of the building, the insurer will limit payment to the actual cash value of the sinkhole loss;

(e) As to underpinning or grouting or any other repair technique performed below the existing foundation of the building, after the insured enters into a contract for the performance of building stabilization or foundation repairs, the insurer will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred. The insurer will not require the insured to advance payment for such repairs; and

(f) If repair has begun and the engineer selected or approved by the insurer determines that the repair cannot be completed within policy limits, the insurer either will complete the engineer's recommended repair or will tender the policy limits to the insured without a reduction for the repair expenses incurred.

(4) If the insurer pays for sinkhole loss, the insurer is required to file a copy of the report and certification (by the engineer and licensed geologist) with the county property appraiser, who is, in turn, required to record the report and certification with the property's parcel number. The insurer pays the cost of filing and recording the report and certification. If the insurer pays for sinkhole loss and the insured sells the property, the insured must disclose to the buyer of the property that a claim has been paid and whether or not the full amount of the claim proceeds were used to repair the sinkhole damage.

The above notices and requirements are mandated by Florida Statutes, sections 627.707 and 627.7073(2).

Sincerely,

Howard Gayheart
Senior Technical Specialist-Property
Representative of USF&G Specialty Insurance Company
hgayhear@travelers.com



*Constitution State Services*

P.O. Box 30181
Tampa FL 33630-3181
813-890-4277/Fax 800-928-1238

December 3, 2009

## CERTIFIED MAIL - RETURN RECEIPT REQUESTED
## AND FIRST CLASS, U.S. MAIL

Mr. and Mrs. Leroy (Sonya) Hagins
c/o Ronald S. Haynes, Esquire
Ronald S. Haynes, P.A.
420 W. Brandon Blvd., Suite 200
Brandon, Florida 33511

|   | Re: | Insured: | Hagins, Leroy and Sonya |
|---|-----|----------|-------------------------|
|   |     | Claim No.: | A9C0877 |
|   |     | Policy No.: | GH20013539 |
|   |     | DOL: | Reported as 5/1/05 |

Dear Mr. & Mrs. Hagins:

   **USF&G SPECIALTY INSURANCE COMPANY** has carefully considered your sinkhole damage claim as set forth above, and we have thoroughly and diligently investigated your loss which was reported to us on or about May 28, 2009, by your attorney, Ron Haynes, Esquire. Based upon the applicable insurance policy and the laws of Florida, and the overall investigation to date which was in compliance with Florida Statutes and which included, but was not limited to, the engineering/subsidence study conducted by HSA Engineers and Scientists (a qualified geotechnical engineering firm), your joint Examination Under Oath elicited by our counsel, a neighborhood canvass/public records search, our thorough review of the records and documents provided, etc., **USF&G SPECIALTY** must inform you that your claim is denied. Your claim is denied for the following reasons:

1. Although sinkhole activity, which is typically considered a covered loss, was confirmed at the insured located via HSA's report dated 11/4/09 (another copy of which is included herewith), your claim is denied based upon your failure to comply with the following conditions of the applicable insurance policy:



EXHIBIT
C

## SECTION I - CONDITIONS

### B. Duties After Loss.

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

    **1.** Give prompt notice to us or our agent;...

    **4.** Protect the property from further damage. If repairs
        to the property are required, you must:
        **a.** Make reasonable and necessary repairs to
            protect the property: and
        **b.** Keep an accurate record of repair expenses;

    **7.** As often as we reasonably require:
        **a.** Show the damaged property;

## "SECTION I - CONDITIONS
### P.   Policy Period.

This policy applies only to loss which occurs during the policy period.

Specifically, **USF&G SPECIALTY** has been substantially and irreparably prejudiced by virtue of your failure to promptly submit your claim. Based upon the statements given by you during your Examination Under Oath, damages to the insured dwelling were allegedly first observed by you in May, 2005, during the **USF&G SPECIALTY** policy period. However, you made no effort to submit your claim at that time, instead waiting until 2009 to notify **USF&G SPECIALTY**.

Your insurance policy with **USF&G SPECIALTY** expired on 11/1/05, and your new homeowner's coverage with a different carrier was effectuated shortly thereafter. By virtue of the unreasonable delay involving the submission of your claim, **USF&G SPECIALTY** has been prejudiced by virtue of being forever precluded and barred from determining whether the sinkhole activity at the insured location commenced during the **USF&G SPECIALTY** policy period. In other words, **USF&G SPECIALTY** has been prevented from determining whether your sinkhole loss commenced during the subject policy term or during a future policy period with another carrier including the effective dates of your present insurance policy with Citizens Property Insurance Corp.

Because several other damages causes have been assigned by the experts and the tools of the geotechnical engineering profession do not enable the experts to make a judgment as to the extent, if any, in which sinkhole activity may have preceded your current policy period, the unreasonable delay in submitting your claim has made it impossible to determine whether one or more of the non-sinkhole causes assigned by HSA, which would have otherwise been excluded from coverage under the **USF&G SPECIALTY** policy, may have been responsible for damages,

if any, occurring during the **USF&G SPECIALTY** policy term. Please also note that under the Policy Period provision, the insurance policy applies only to covered losses which occur during the policy period.

Additionally, **USF&G SPECIALTY** has been precluded from completing the investigation and, thus, has been substantially prejudiced since your late reporting of the claim has prevented **USF&G SPECIALTY** from fully addressing and considering the nature, extent and history of your damages which you allegedly first observed in 2005. Moreover, the failure to promptly report your claim will have also prejudiced us if the damages increased in severity between the time of your first observation of the damages and the date when the claim was actually submitted.

To the extent it is unknown whether sinkhole activity was a cause of damages during the **USF&G SPECIALTY** policy period, we cite the following policy exclusions which would be applicable if damages during the **USF&G SPECIALTY** policy period were caused by one or more of the other causes assigned by HSA:

## SECTION 1 - EXCLUSIONS

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

### 2. Earth Movement

Earth Movement means:
- **a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;
- **b.** Landslide, mudslide or mudflow;
- **c.** Subsidence or sinkhole;
- **d.** Any other earth movement including earth sinkin, rising, or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

## SECTION 1 – PERILS INSURED AGAINST

### A. Coverage A – Dwelling And Coverage B – Other Structures

1. We insure against risk of direct physical loss to property described in Coverages **A** and **B**.

2. We do not insure, however, for loss:

   **c.** Caused by:

6. Any of the following:

    f. Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

## SECTION 1 – EXCLUSIONS

B. We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following.  However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered

    3. Faulty, inadequate or defective:
       a. Planning, zoning, development, surveying, siting;
       b. Design, specifications, workmanship, renovation, remodeling, grading, compaction;
       c. Materials usd in repair, construction, renovation or remodeling; or
       d. Maintenance;
      of part or all of any property whether on or off the "residence premises".

Based upon the foregoing, you should afford consideration to the submission of a sinkhole claim to Citizens, your current carrier.  Since you are the named insureds under the Citizens' homeowner's policy, the decision whether to submit a claim is yours and should be made in consultation with your attorney.

Also, enclosed with this denial letter is a certified copy of your insurance policy.  Once you have had an opportunity to review the enclosures, we will be happy to entertain any questions or comments you may have.  Accordingly, please feel free to contact the undersigned, on behalf of **USF&G SPECIALTY INSURANCE COMPANY**, Post Office Box 30181, Tampa, FL 33630-3181, telephone number (813) 890-4277.

In accordance with §627.7074, Florida Statutes, and the facts to date, **USF&G SPECIALTY INSURANCE COMPANY** may be required to notify the policyholder of his or her right to participate in the neutral evaluation program as prescribed by the statute.  In essence, neutral evaluation is an alternative procedure for the resolution of disputed sinkhole insurance claims and there are numerous requirements associated with the process.  Attached is a copy of the pamphlet titled Settling Your Sinkhole Claim which was prepared by the Department of Financial Services.  As noted in the statute, the purpose of the pamphlet is to describe the neutral evaluation process and to include the information and forms necessary for the policyholder to request the neutral evaluation.  Of course, you are encouraged to contact the Department of Financial Services at the numbers noted in the pamphlet should you be need of additional information or wish to explore this option.

Notwithstanding the denial of your claim and the well-founded basis for the claim denial as set forth above, you may also be entitled to mediation in accordance with the rules established by the Florida Department of Financial Services.  Please understand that this is not mandatory, it is simply an option available to you should you disagree with our position.  Should you demand mediation, any settlement during the course of the mediation is binding only if both parties agree in writing.  We will pay the cost of conducting any mediation conference except when you fail to appear at the conference.  If you should wish to exercise your mediation option, please contact

me at your earliest convenience. Please be specifically advised that we reserve the right to reassert/reaffirm our denial decision in the event the parties fail to reach an agreement at the mediation which you demand. In order to assist you, we have enclosed copies of the Department of Financial Services information which explains the process.

Please be further advised that **USF&G SPECIALTY INSURANCE COMPANY** is reserving any and all rights and defenses we may have pursuant to the subject insurance policy and under the laws of Florida, and our rights and privileges are expressly reserved. We are specifically reserving our right to assert additional grounds for the denial of your claim as well as additional facts and circumstances in support of our decision.

It is most unfortunate that a loss of any nature should occur, however, we sincerely regret that based upon the terms and conditions of your insurance policy, the laws of Florida and the facts to date, we are unable to provide coverage on this claim. Again, please feel free to contact me as noted above.

Sincerely,

Howard Gayheart
Senior Technical Specialist-Property
Representative of USF&G Specialty Insurance Company

cc: Mike Terrana

enc: DFS Mediation Brochure
     Settling Your Sinkhole Claim Brochure
     Certified Copy of the Policy
     HSA Report

Dear Policyholder:

The Florida Department of Financial Services has established a mediation program to resolve claim disputes between insurers and Florida policyholders involving losses caused to residential property by hurricanes, fires, and other causes. Insurance companies are required to notify policyholders of their right to mediate if the claim is disputed and has not been resolved in a timely manner.

This brochure will help you understand what to expect from the mediation program. If you have questions or need additional information, you can contact us at 1-877-MY-FL-CFO (1-877-693-5236).

Sincerely,

*Alex Sink*

**Alex Sink**
**Chief Financial Officer**
STATE OF FLORIDA



**ALEX SINK**
**CHIEF FINANCIAL OFFICER**
**STATE OF FLORIDA**
Florida Department of Financial Services
200 East Gaines Street
Tallahassee, Florida 32399-0323



# Mediation Programs
RESIDENTIAL PROPERTY CLAIM DISPUTES

**ALEX SINK**
**CHIEF FINANCIAL OFFICER**
**STATE OF FLORIDA**
Florida Department of Financial Services







## What is mediation?

Mediation is a process where a neutral third party meets with you and your insurer in order to reach an agreement both parties can accept.

Mediation is not arbitration, where the arbitrator actually makes the decision on how to resolve the dispute. Instead, the mediator helps the parties focus on the issues and understand each other's point of view, but does not dictate the outcome of the discussion.

...'er to help everyone express their point of ... in the most non-threatening atmosphere, the mediator may meet privately with you or your insurance company. The most important thing to remember about participating in mediation is that you have a chance to explain what you believe you are entitled to under your insurance claim.

## Who are the mediators?

Mediators are trained professionals who are skilled in resolving disputes. All have been specifically trained in mediation theory and practice. Mediators are unbiased — they must have no ties or affiliation with you or the insurance company. Either party can request that the mediator be replaced if there is good cause

...for instance, if there is a conflict of interest between you, the company or the mediator.

## What are the limits of mediation?

Mediation is non-binding. Neither you nor the company is legally obligated to accept the outcome. Even if you do settle at the mediation, you have a three-day grace period to change your mind, as long as you do not cash your settlement check and you inform your insurance company that you have decided to reject the mediated outcome. Choosing mediation does not prevent you from participating in other dispute resolution procedures, or even going to court later. Nothing you say in a mediation conference can be used against you in any later proceedings.

## Are commercial residential properties eligible?

Yes. During its 2005 session, the Legislature revised section 627.7015, Florida Statutes (Alternative Procedure for Resolution of Disputed Personal Lines Insurance Claims), allowing for mediation of commercial residential claim disputes. This program includes condominium association master policies, policies covering apartment buildings, rental property, and other

residential commercial properties. The request form for this mediation program can be obtained from the DFS Web site at www.MyFloridaCFO.com or by calling the Department's Consumer Helpline at 1-877-MY-FL-CFO (1-877-693-5236).

## Am I eligible?

Anyone with a disputed residential property damage claim — arising from covered damage — in excess of $500, not including the deductible, can participate in mediation. Disputed claims are exempt from mediation when fraud is suspected. Commercial and liability claims are also exempt from mediation.

To find out if you qualify, or to request mediation, call DFS toll-free at 1-877-MY-FL-CFO (1-877-693-5236).

## How much time and money is this going to cost?

Mediation can continue as long as both parties agree that they are making progress. In fact, most mediation procedures only last about two hours. Mediation is paid for by the insurance company, except in the case where the consumer cancels without good cause and wants to reschedule the mediation, then the consumer pays.

## How do I get started?

Your insurance company is required to notify you in writing of your right to mediation. If you wish to request mediation contact DFS at 1-877-MY-FL-CFO (1-877-693-5236). Once mediation has been agreed to, the mediator will notify you and the company of the date, time and place of the conference. Mediation will be held at a neutral site.

## Who can attend, and what should I bring?

If you are relying on architects, adjustors, or contractors to justify your claim, you may ask them to attend with you. Review your policy carefully and look for names of those listed as "named insured." If the people listed there cannot attend, send someone who has the authority (often called "power of attorney") to act on behalf of the "named insured" who can make a decision about settling a claim. Since mediation is designed to be non-adversarial, it is not necessary to have a lawyer present, however, you may bring one if you choose as long as prior notice is given.

Be sure to bring any supporting documents, including your policy, photographs, estimates, bills, reports, letters, etc. It is important to bring specific dollar estimates or quotes for all items that are in dispute. Those who don't speak English are required to furnish interpreters.

Explain dispute fully in order of events.
Use additional sheets if necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

signature _____

Date _____

Please return with any documentation to:

**Department of Financial Services**
Mediation Section
Bureau of Education, Advocacy and Research
200 E. Gaines St.
Tallahassee, FL 32399-4212



## Then What?

The Department of Financial Services will provide a list of certified Neutral Evaluators to both you and your insurance company. You and your insurer have 10 business days to mutually select a Neutral Evaluator. If you and your insurer cannot agree on an evaluator within 10 business days, the Department of Financial Services will appoint one.

Once a Neutral Evaluator has been assigned, he or she has five business days to notify you and your insurance company of the date, time, and place of the initial neutral evaluation conference. The conference may be conducted by telephone if desired. The conference will be scheduled within 45 days upon receipt of the request.

You also have the right to request a Florida Department of Financial Services insurance specialist to assist you with your claim, but only if you are participating in the program without an attorney. The specialist's role will be to provide you with detailed information about the program's procedures, and to help you understand technical information concerning your claim. The specialist cannot give legal advice or act as an advocate for you.



# Settling
# Your
# Sinkhole
# Claim

## Where to Find Help

**Alex Sink**
Chief Financial Officer
State of Florida

DEPARTMENT OF FINANCIAL SERVICES

This brochure provides an overview of the Neutral Evaluator program, a nonbinding mediation procedure enacted by the Florida Legislature in 2006. For more information about the program, call the Department of Financial Services toll-free at 1-800-342-2762.

## Resolving Disputed Sinkhole Insurance Claims

If your insurance company has denied a claim for loss or damage that you believe was caused by a sinkhole, the Florida Department of Financial Services is available to assist you through its Neutral Evaluator program. The resolution procedure, which involves the use of a state-certified Neutral Evaluator, is authorized through Florida Statute 627.7074.

Your insurance company is required to pay all costs associated with the Neutral Evaluator program.

## How Does the Neutral Evaluator Program Work?

The Neutral Evaluator program is a process in which a professional engineer or geologist serves as an objective third party to determine the existence, nature and scope of a sinkhole loss, as well as the nature, extent and cost of repair and remediation. The Neutral Evaluator will schedule an informal conference in which you and your insurance company representative may submit evidence, testimony or other information that could help the Neutral Evaluator reach his or her decision.

Neutral evaluation is mandatory if requested by you or your insurance company. The evaluation is nonbinding, and both parties retain their right to pursue legal action. The evaluator's

written recommendation is admissible in any subsequent legal action or proceeding relating to the claim or to the cause of action giving rise to the claim.

You and your insurance company may settle the claim at any time during this procedure. If no agreement is reached, the Neutral Evaluator will file a report stating that in his or her opinion, the sinkhole loss has been verified or eliminated. If verified, the evaluator's report will include estimated costs for stabilizing the land and any covered structures or buildings and other appropriate remediation or structural repairs. Copies of the report will be sent to all parties involved in the neutral evaluation process, as well as the Florida Department of Financial Services.

If the Neutral Evaluator verifies the existence of a sinkhole, and if the estimated costs for loss and repair exceed the amount that the insurer has offered to pay the policyholder, the insurer must pay the policyholder up to $2,500 in attorney fees if you hire an attorney to participate in the neutral evaluation process.

## How Do I Request the Use of a Neutral Evaluator?

Either you or your insurance company representative may initiate the use of a Neutral Evaluator. To request an evaluator, you may either fill out and mail the form printed on this brochure or call the Florida Department of Financial Services' toll-free number at 1-800-342-2762. You also may fax a request to 1-850-488-6372.

## Request for Neutral Evaluator

Name _____

Address _____

Home Phone _____

Insured Property Address (if different): _____

Name of Insurance Company: _____

Name of Insured Shown on Policy: _____

Policy Number: _____

Continued on back